Minute Order Form (01/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5070 | **DATE** | 9/28/2001 |
| **CASE TITLE** | Gienko vs. Padda | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motions to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the Court GRANTS EGS's Motions to Dismiss [#32-1] without prejudice and DENIES AS MOOT EGS's earlier Motion to Dismiss [#13-1], GRANTS KPMG's Motion to Dismiss [#15-1], GRANTS Holden's Motion to Dismiss [#17-1] without prejudice, GRANTS Padda's Motion to Dismiss [#29-1] without prejudice, GRANTS Reilly's Motion to Dismiss [#34-1] without prejudice, and GRANTS Lautman's Motion to Dismiss [#38-1] without prejudice. Said document numbers are all terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 2 8 2001 | |
| | Notified counsel by telephone. | | date docketed | 76 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | ED FOR DOCKETING 01 SEP 28 PM 3:58 | date mailed notice | |
| mrl | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | |
|---|---|
| Robert C. Geinko, Mark Pugh, Steve Fagerman, and Keneth Janowski, | |
| Plaintiffs, | No. 00 C 5070 |
| v. | |
| K. Shan Padda, Steven Holden, Paul S. Jurewicz, John Reilly, William D. Lautman, EGS Securities Corp. and KPMG, LLP, | The Hon. David H. Coar |
| Defendants. | |

DOCKETED SEP 2 8 2001

## MEMORANDUM OPINION AND ORDER

Plaintiffs, a group of business owners, sued the officers, directors, investment advisor and outside accountant for violations of the securities laws and included various state-law claims as well. The crux of the plaintiffs' complaint is that the defendants duped them into thinking that Sabratek – the defendants' company – was worth more than it actually was. The defendants allegedly carried out this scheme to induce the plaintiffs into selling their company – SRS – to the defendants not for cash, but in exchange for Sabratek stock. With the scheme grossly inflating Sabratek's value, a stock swap allowed the defendants to acquire SRS on behalf of Sabratek for far less than its cash value. This much is fairly simple. Things get slightly more complex, though, in detailing the defendants' acts in furtherance of this scheme.

Plaintiffs alleged in Count I that each of the defendants violated Section 10b of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. In Count II, they allege that the individual defendants violated Section 20a of the Securities Exchange Act, 15 U.S.C. § 78t(a), as people who controlled primary violators of the securities laws. In addition to the federal claims, the plaintiffs allege that the scheme that they describe also violates the common-law fraud of the State of Illinois (Count III), the Illinois Securities Act of 1953, 815 ILCS 5/1 *et seq.* (Count

IV),[1] and the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 (Count V). The case comes before the court now on the Defendants' individual motions to dismiss. With the exception of Paul Jurewicz, each of the defendants have moved to dismiss all or nearly all of the counts against them. For the reasons stated herein, the Court GRANTS the Defendants' motions in their entirety but WITHOUT PREJUDICE.

## Background

The defendants here are K. Shan Padda, Steven L. Holden, John Reilly, William D. Lautman, EGS Securities Corporation, and KPMG, LLP. The individuals were Sabratek's highest ranking officers and directors. Padda was Sabratek's chief executive officer and chairman, Holden was president and treasurer, Reilly was chief financial officer prior to and at the time of the SRS acquisition, and Lautman was a Sabratek director and served on the board's audit committee, and was also was a managing director and director of EGS. The institutional defendants, EGS and KPMG were Sabratek's' investment banking advisor in the SRS acquisition, and Sabratek's principle accounting firm respectively.

In the fall of 1998, some of the defendants raised with the plaintiffs the idea of selling SRS to Sabratek. The transaction was initially intended to be structured as a cash sale, but based on assurances that plaintiffs' received from defendants, the plaintiffs agreed to sell SRS in exchange for 1,565,565 shares of Sabratek stock. In general – specifics, to the extent that they are provided in the complaint, will be addressed in the discussion to follow – the defendants assured the plaintiffs that they could rely on Sabratek's publicly-reported financial statements as an accurate representation of Sabratek's good financial health. Those statements, defendants told the plaintiffs, had been audited by KPMG in accordance with Generally Accepted Accounting Principles. KPMG had

---

[1] KPMG and the plaintiffs jointly dismissed Count IV on November 1, 2000.

provided an "unqualified" opinion of Sabratek's year-end financial statements on March 12, 1999. Additionally, they assured the plaintiffs that a shareholder lawsuit against the company and its officers lacked merit. Several defendants also told the plaintiffs that after the merger of SRS and Sabratek, Sabratek's stock would trade at nearly double its current trading price.

On October 7, 1999, after the sale of SRS had been completed, Sabratek announced that it was restating approximately $39 million in assets. Additionally, Sabratek publicly disclosed that it was restating its previously-reported financial results for the reporting periods between April 1, 1997 and March 31, 1999. The restatements and recharacterizations related primarily to the reclassifying of certain "intangible assets" as expenses. The restatement would reduce Sabratek's earnings for the two-year period by about $39 million. As might be expected, Sabratek's stock price plummeted after this announcement. Near or on October 21, 1999, the plaintiffs bought back from Sabratek certain SRS assets and assumed certain of SRS's liabilities. As noted above, plaintiffs sued the defendants and the defendants have now moved to dismiss.

## Analysis

A complaint fails to state a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6), only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The plaintiff gets the benefit of the doubt with ambiguities and inferences. Also, the Court treats well-pleaded facts as true for purposes of the motion. See, e.g., Chu v. Sabratek Corp., 100 F. Supp. 2d 815 (N.D. Ill. 2000) ("Chu I"). In fraud cases, though, Federal Rule of Civil Procedure 9(b) requires plaintiffs to state "with particularity" the circumstances constituting the fraud. See Fed. R. Civ. P. 9(b). In Seventh Circuit vernacular, this means that plaintiffs must plead facts related to the "who, what, when, where, how" of the fraud. See DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.

1996). The PSLRA further requires plaintiffs to "specify each statement alleged to have been misleading, [and] the reason why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

I.

Count I alleges securities fraud in direct violation of Section 10b of the Securities Exchange Act and Rule 10b-5. The elements of a Section 10(b) claim are: (1) knowing or recklessly indifferent (2) misstatement or omission, (3) of material fact (4), in connection with the purchase or sale of securities, (5) upon which plaintiff has relied and (6) to the plaintiff's detriment. E.g., In re HealthCare Compare Corp., 75 F.3d 276, 280 (7th Cir. 1996). All of the defendants challenge the complaint for failing to allege any misstatements with sufficient particularity under Rule 9b, and for failing to allege a sufficiently culpable mental state under the PSLRA.

On the surface, determining whether a particular statement is true or false would seem to be a straightforward inquiry. Because statements in the context of securities actions are rarely susceptible to simple determination of truth or falsity, the articulation of some principles is in order. First, literal truth is not the measuring stick for statements in a 10b claim, because statements that are literally true may still mislead investors. See, e.g., Lindelow v. Hill, No. 00 C 3727, 2001 WL 830956, at *3. So this Court looks at statements both in isolation and in context to determine whether they accurately inform or whether they mislead prospective buyers of securities. Id. (citations omitted).

Also, although vague statements as to future performance are not generally sufficient to support a securities law violation, see, e.g., Arazie v. Mullane, 2 F.3d 1456, 1468 (7th Cir. 1993), the Seventh Circuit has rejected a *per se* rule that would insulate all such statements completely from liability. Stransky v. Cummins Engine Co., 51 F.3d 1329, 1333 (7th Cir. 1995). While "[m]ere sales puffery is not actionable under Section 10b-5," Eisenstadt v. Centel Corp., 113 F.3d 738, 746 (7th

Cir. 1997), each statement must be examined individually. In re Next Level Sys., Inc., No. 97 C 7362, 1999 WL 387446 at *6 (N.D. Ill. Mar. 31, 1999). If predictions about the future are "inaccurate when made, defendants can be held liable under 10(b) and Rule 10b-5." Id. (citing Arazie, 2 F.3d at 1468). To be actionable, plaintiffs must allege facts that demonstrate: (1) that the defendants lacked good faith in making the so-called forward looking statements; or (2) that the statements had no reasonable basis at the time that defendants made them. Kas v. Caterpillar, Inc., 815 F. Supp. 1158,1170 (C.D. Ill. 1992) (citing Wielgos v. Commonwealth Edison Co.,892 F.2d 509, 513 (7th Cir. 1989)).

To support a claim for securities fraud, plaintiffs must plead and prove that the defendants made statements or omitted facts with an "intent to deceive, manipulate or defraud," see, e.g., Ernst & Young v. Hochfelder, 425 U.S. 185, 194 n.12 (1976), or with a "reckless disregard for the truth" of those statements. See Sundstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033, 1044-45 (7th Cir.1977).[2] Although Rule 9(b) usually permits plaintiffs to plead intent generally, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

Generally, courts – including this one – have said that plaintiffs accomplish this by alleging facts: (a) "that show that the defendants had both motive and opportunity to commit fraud;" or (b) "that constitute strong circumstantial evidence of conscious behavior or recklessness." Nanophase, 2000 WL 1154631 at *6 (citing Rehm v. Eagle Finance Corp., 954 F. Supp. 1246, 1251 (N.D. Ill. 1997). While this categorical approach has the superficial appeal of precision by providing a factor-

---

[2] This Court refuses to reject the recklessness standard first articulated for the Seventh Circuit in Sundstrand because that standard predated the PSLRA. The Court, like other Courts in this district that have addressed the issue, see Chu, 100 F. Supp. 2d at 822-23, finds that recklessness still suffices for 10b claims.

based analysis, the precision is somewhat illusory. After all, motive and opportunity are simply types of circumstantial evidence of intent. E.g., Barbeau v. United States, 193 F.2d 945, 951 (9th Cir. 1951). This Court agrees with Judge Castillo's statement in Chu that "[t]he type of facts with which the plaintiff pleads scienter factor[s] little into our analysis, as long as the overall facts give rise to 'a strong inference' of scienter." Chu I, 100 F. Supp. 2d at 823. Evidence of motive and opportunity are not necessary nor always sufficient to state a claim for securities fraud. Regardless of the type of facts alleged -- i.e., direct or circumstantial evidence, or particular types of circumstantial evidence -- the touchstone remains whether the facts plead give rise to a "strong inference" of scienter. Id.

## K. Shan Padda

The plaintiffs allege that Padda misrepresented true facts in three instances:[3] first, that the lawsuit styled Chu v. Sabratek lacked merit; second, that KPMG audited Sabratek's financial statement according to GAAP; and finally, that Sabratek's stock price would increase after the SRS and Sabratek merger. Padda responds to each of these saying that: first, that Judge Castillo dismissed as insufficient the allegations contained in the complaint on file when Padda made statements regarding its merit (therefore the statement wasn't false); second, with respect to his statements concerning the audit of Sabratek's financial statements, that the plaintiffs have not plead scienter with sufficient particularity under the PSLRA and Rule 9b; finally, that his statements regarding Sabratek's future stock price are protected by the PSLRA's safe-harbor provisions for forward-looking statements.

---

[3] The Court ignores any allegations that the plaintiffs have made against "defendants" generally. See Chu v. Sabratek, 100 F. Supp. 2d 827, 837 (N.D. Ill. 2000) ("Chu II") (holding that the PSLRA has expressly eliminated the "group pleading doctrine" and requiring the plaintiffs to plead facts particularly to each defendant for each instance of alleged fraud).

Padda's statement regarding the prior lawsuit cannot support a fraud claim because the plaintiffs have not plead that he misrepresented any fact; nor could they. They allege that in mid-June 1999, Padda was asked about the merits of an amended class-actions complaint "filed on or about June 7, 1999, in federal district court in Chicago, which alleged that Sabratek, its officers, and directors, and KPMG had made false and misleading statements and omissions in Sabratek's financial statements." Compl. ¶ 32. They also say that Padda commented on a number of occasions that the suit lacked merit. Nowhere, though, do they allege that the allegations of the complaint had merit. Instead, without reference to the allegations in the Chu case, they vaguely refer to an allegation that Padda knew Sabratek's true financial condition. This does not show that the allegations of the complaint then pending had merit.[4] Without such an allegation, Padda's motion in this respect must be granted.

Plaintiffs have adequately alleged that Padda's statement that KPMG audited Sabratek's financials according to GAAP[5] was a misrepresentation. According to the complaint, KPMG mischaracterized as intangible assets, close to $39 million in expenses. The plaintiffs also allege that this mischaracterization violated GAAP. This is sufficient to satisfy Rule 9b's pleading requirements. Regarding Padda's mental state, though, the Court is not satisfied that the plaintiffs have plead facts that give rise to a strong inference of scienter related to this statement.

---

[4] The Plaintiffs's complaint does not contain any allegations regarding Judge Castillo's disposition of the complaint then on file in the Chu case. This Court, however, takes judicial notice of the fact that Judge Castillo dismissed the allegations of complaint. The allegations that Judge Castillo sustained in the face of defendants' motions to dismiss were added in an amended complaint after Padda made his comments.

[5] Plaintiffs do not allege that KPMG is not an international accounting firm. Thus his statement that Sabratek's financial statements had been audited by an international accounting firm are not misstatements and cannot be the basis for a Section 10b claim.

Plaintiffs approach to scienter is of the proverbial "kitchen sink" variety. In its memorandum, plaintiffs frequently point to alleged misstatements and argue that the misstatements themselves are evidence of scienter. The Court is unaware of any case – and plaintiffs have not cited any – that suggest that the allegedly false statements can also be evidence of scienter. This approach is not persuasive.

The Complaint also relies on generalized statements of knowledge. For example, their complaint says that all of the defendants "acted with scienter because they knew and/or recklessly disregarded the falsity and misleading nature of the public documents and statements upon which plaintiffs relied." Compl. ¶ 49. Padda is not mentioned by name in the complaint at all with respect to the fraudulent accounting. Instead, their memorandum relies on a "group argument" and treats all of the individual defendants together. This approach too, is unpersuasive. Chu II, 100 F. Supp. at 837.

Essentially, the plaintiffs rely on the magnitude of the alleged fraudulent mischaracterization of assets and Padda's position in the company and ask that this be enough to support a strong inference of scienter.[6] They even go so far as to compare their complaint to the complaint in Chu and suggest that since Judge Castillo found scienter as to certain defendants there, this Court ought

---

[6] The plaintiffs also argue that "motive and opportunity" allegations support the strong inference of scienter. But the motive on which plaintiffs rely in turn relies on the defendants' knowledge of the "true financial condition" of Sabratek. Permitting plaintiffs to say that the defendants were motivated because they knew Sabratek was in financial trouble and to use that as circumstantial evidence of the fact that they knew Sabratek was in financial trouble would allow the plaintiffs to bootstrap them into the very thing that they are trying to plead.

Additionally, to the extent that the plaintiffs argue that the defendants stood to benefit from "fees and other continuing financial benefits" (Resp. Brf. At 22), they have not differentiated these defendants from any other corporate officers or directors who have the same motives. See Chu, 100 F. Supp. at 841 (rejecting motive allegations that simply illustrated "goals of all corporate executives.")

to find that the plaintiffs here have adequately plead scienter. The problem with that argument is that the complaint that Judge Castillo had before him is markedly different than the one before this Court.

In Chu, the plaintiffs plead the magnitude of fraud and Sabratek's subsequent restatement of assets and earnings as evidence of scienter just as plaintiffs have done here. But, unlike this case, that complaint alleged that Padda admitted that KPMG had helped get Sabratek's research and development costs "off the books." See Chu II, 100 F. Supp. at 840. Additionally, the plaintiffs in Chu alleged that there was an "utter lack of documents supporting the reported 'intangible assets.'" Id. Finally, the plaintiffs there plead the existence of numerous "red flags" that should have tipped off Padda and others of the accounting problems. For example, they alleged that Sabratek's intangible assets in 1996 accounted for 1% of its total assets accounted for 21% in 1998. Also, they allege that Unitron, "which received the lion's share of the money, had no marketable product and was at least 18 months away from going to market with the product Sabratek supposedly licensed." Id. None of these additional and specific allegations appears in the plaintiffs' complaint here. Although a close call, the plaintiffs have fallen short of their pleading obligation with respect to Padda's mental state.[7] This aspect of Padda's motion to dismiss is therefore granted, but without prejudice.[8]

Finally, Padda says that his statement regarding Sabratek's future stock price cannot support a 10b claim because it was a "forward looking statement" and as such not an actionable

---

[7] Cases such as In re System Software Assocs., No. 97 C 177, 2000 WL 283099, at *14 (N.D. Ill. Mar. 8, 2000) upon which plaintiffs rely for the proposition that "hiding revenue shortfalls" is evidence of scienter, do not save plaintiffs' complaint. In that case, for example, plaintiffs alleged that the auditor warned the defendants about improper revenue recognition and the defendants ignored the warning. Id. No such warnings have been alleged here.

[8] If, like the plaintiffs in Chu plaintiffs here are able to plead more specific facts, including "red flags" that should have alerted the officer and director defendants to the accounting misstatement, such additional facts would likely mean the survival of their complaint.

misstatement. He also argues that the plaintiffs failed to plead facts showing a strong inference that he acted with the requisite scienter. The Court need not address the first issue because it finds that the complaint does not adequately allege facts regarding scienter.

With respect to Padda's statement of Sabratek's future stock price, the plaintiffs rely on their allegation that he knew of Sabratek's true financial condition to support an inference of scienter. In other words, plaintiffs say that Padda knew that Sabratek had $39 million less in assets than the public knew about so his prediction that Sabratek's future stock price could not have been made in good faith. But, as noted with respect to the alleged GAAP violations, plaintiffs did not adequately plead facts giving rise to a strong inference of scienter. The necessary scienter here – knowledge that Sabratek's assets were overstated – is essentially the same as with the alleged GAAP violations. And, the plaintiffs' complaint is deficient for the same reasons. Plaintiffs have not plead sufficient facts that give rise to a strong inference that Padda knew of the mischaracterization. As with the alleged accounting misstatement, Padda's motion is granted in this respect, also without prejudice.

### Steven Holden

Holden moves to dismiss the Section 10b and Rule 10b-5 claims against him arguing that the plaintiffs have not satisfied the PSLRA's stringent pleading requirements with respect to scienter. To address that argument, it is first necessary to examine the statements that the plaintiffs claim are false. First, he stated that the shareholder lawsuit lacked merit. Second, according to the plaintiffs, Holden told them that an independent accounting firm would confirm Sabratek's publicly-filed financial statements. Finally, he assured the plaintiffs that Sabratek's financial statements were fairly presented.

As an initial matter, with regard to the statement that the shareholder lawsuit brought against the company and its officers lacked merit, plaintiffs have failed to show how this statement is false,

just as in Padda's situation. Consequently it cannot be the basis for a Section 10b and Rule 10b-5 claim.

Also, both with respect to the fairness of Sabratek's financial statements and to the future confirmation of Sabratek's financials by an independent accounting firm, plaintiffs' complaint is deficient for the same reasons stated with respect to Padda. The plaintiffs rely on the magnitude of the misstatement of assets and on the company's subsequent restatement of earnings and ask the Court to infer that Holden knew of the accounting errors and of the company's "true" financial condition. Unlike the plaintiffs in Chu, the plaintiffs here do not plead any context from which to judge the mischaracterization of assets or restatement of earnings. Although a close call, the two facts and a generalized allegation of knowledge standing alone are not sufficient to sustain a claim. Holden's motion in this respect is granted without prejudice.

### John Reilly

Plaintiffs also claim that Reilly violated Section 10b and Rule 10b-5 by his statement that it was important to close the SRS transaction quickly, but they have failed to show how this statement is false. Apparently, the plaintiffs consider this part of the scheme to defraud them and consider it circumstantial evidence of a shady deal. They seek to invoke an inference that hurrying a transaction through is evidence of an illicit intent. It may be, but it is not a false statement of fact. In reality, Reilly probably wanted the transaction to move quickly – likely making it a true statement. True or not, though, the plaintiffs have simply failed to allege any facts to support the inference that this statement is false. Thus, it cannot support a Section 10b or Rule 10b-5 claim.

Likewise, plaintiffs have not alleged any facts suggesting that Reilly's statement to the plaintiffs, that he personally reviewed all of the documents in the shareholder lawsuit was false. It

is unclear whether Reilly did or did not review all such documents, but plaintiffs have not plead facts to suggest that he didn't. Consequently, it does not survive Reilly's motion to dismiss.

Finally, as with Padda and Holden, with respect to knowing and concealing Sabratek's "true financial condition," plaintiffs complaint is likewise deficient here. Plaintiffs rely on the same group of facts and the same type of generalized allegations of knowledge in its complaint.[9] As with those defendants, such pleadings are not sufficient under the PSLRA.

### William D. Lautman

As in the case with Reilly, the Plaintiffs allege that Lautman violated Section 10b and Rule 10b-5 by stating that it was important to close the transaction before the end of the second quarter. As in Reilly's case, the plaintiffs have not alleged facts suggesting that this statement was false. Indeed, the truth of this statement is necessary to give it the illicit overtone that the plaintiffs apparently seek. In any case, since the pleading is deficient with respect to this statement, it cannot form the basis of a Section 10b or Rule 10b-5 claim.

Additionally, the plaintiffs say that Lautman violated Section 10b and Rule 10b-5 by stating that Sabratek did not have financial problems, and that the second quarter of 1999 "looked okay." As with the other individual defendants, the plaintiffs have not provided detail regarding how Lautman knew that the second quarter would not "look okay." Unlike the plaintiffs in Chu II, plaintiffs here do not plead the existence of any "red flags." The only other allegation upon which plaintiffs rely is that Lautman encouraged the sale to close quickly. Even drawing inferences in favor of the plaintiffs, without other factual context, this rather innocuous statement does not support a

---

[9] In reaching this decision with respect to Reilly, the Court does not take into account Reilly's argument that he was not employed when the original audit was performed. These are facts outside of the complaint, and unnecessary for the Court's disposition.

-12-

"strong inference" of scienter. Consequently, plaintiffs claim against Lautman in this respect is also denied without prejudice.

### EGS Securities Corporation

The securities fraud claims against EGS derive from certain statements that Lautman made.[10] Because the Court finds that the plaintiffs allegations against Lautman are insufficient under the PSLRA, it can assume without deciding that he acted as EGS's agent. Even so, without any liability for Lautman's statements on his own behalf, they cannot be imputed to create wrongdoing for EGS. Thus, EGS's motion with respect to Count I is granted without prejudice.

### KPMG

To satisfy Section 10b's metal state requirement against outside auditors a complaint must allege more than simple accounting errors. See, e.g., Chu, 100 F. Supp. at 838. Recklessness in a securities fraud action against an accountant is defined as "highly unreasonable conduct, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." SEC v. Price Waterhouse, 797 F. Supp. 1217, 1240 (S.D.N.Y.1992) (citations and quotation omitted). The Complaint must allege that "the accounting practices amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." Chu I, 100 F. Supp. 2d at 823-24 (quotations and citations omitted); Rehm, 954 F. Supp. at 1255.

---

[10] To the extent that the plaintiffs refer only to EGS or EGS and Lautman (implying that EGS acted in some way other than through Lautman) see Compl. ¶¶ 28, 30, they have not identified with particularity who EGS acted through. For this reason also, EGS's motion is granted without prejudice.

"[C]ombined with other circumstances suggesting fraudulent intent, allegations of improper accounting may support a strong inference of scienter." Marksman Partners, L.P., 927 F. Supp. 1297, 1313 (C.D. Cal.1996). Very obvious and very large mistakes are more likely to be sufficient pleading. See, e.g., Miller, 9 F. Supp.2d at 928. See also Rehm, 954 F. Supp. at 1256 ("[t]he more serious the error . . . the stronger the inference that defendants must have known about the discrepancy"); see also In re Leslie Fay Companies, 835 F. Supp. at 175 (failure to discover large-scale accounting fraud "raises an inference of scienter on the face of the pleading"). And, "[d]eliberately ignoring "red flags" can constitute the sort of recklessness necessary to support § 10(b) liability." Id.; see also In re Health Management, 970 F. Supp. at 203 (finding that allegations of accounting firm's ignorance of red flags presented evidence of fraudulent intent).

According to KPMG, the plaintiffs have not sufficiently alleged fraudulent intent. The Court agrees. The plaintiffs have not plead with sufficient particularity the facts that would give rise to a strong inference of fraudulent intent. The crux of the plaintiffs' scienter allegations against KPMG is that Gilboy wanted to defraud the plaintiffs to keep KPMG's business. In addition, the plaintiffs rely on the fact and magnitude of the earnings restatement. These allegations are not sufficient by themselves.

First, the bare desire to obtain fees for audit service are legally insufficient as a matter of pleading to support an inference of fraudulent intent, even under the pre-PSLRA pleading standards. See, e.g., Di Leo, 901 F.2d at 929-30.[11] Also insufficient to satisfy the "strong inference" requirement are bare allegations that a company restated its earnings, See In re System Software Assocs., Inc. Security Litigation, No. 97 C 177, 2000 WL 283099, at *13 (N.D. Ill. Mar. 8, 2000);

---

[11] In light of the pleading deficiency under DiLeo, the Court does not address KPMG's argument with respect to the fact that allegations of Gilboy's desire to keep Sabratek as a client was on "information and belief."

see also Goldberg v. Household Bank, F.S.B., 890 F.2d 965, 967 (7th Cir. 1989) (pre-PSLRA case stating that earnings restatements are common), or violated GAAP. See, e.g., Rehm, 954 F. Supp. at 1255 (allegations of erroneous financial statements alone are insufficient to raise inference that the audit company's management committed fraud); The Limited, Inc. v. McCrory Corp., 645 F. Supp. 1038, 1045 (S.D.N.Y. 1986) (same as to auditor). As to these allegations, even the plaintiffs do not argue strenuously that they support an inference of fraudulent intent.

The plaintiffs rely heavily on the magnitude of the fraud as supporting an inference of scienter. They don't cite any cases, though, giving any indication as to how much of a misstatement is enough by itself to raise a sufficiently strong inference under the PSLRA. Additionally, unlike the plaintiffs in Chu I, the plaintiffs here have not alleged other facts that raise "red flags" that alert accountants to problems. See Chu I, 100 F. Supp. 2d at 824.

In Chu I, those plaintiffs alleged specifically that Sabratek's $7 and $4 million deals with Unitrol represented an overall 242 per cent increase in Sabratek's reported intangible assets. And the decision not to expense these deals resulted in a $7.2 million increase in net income. Unitrol, though, was a developmental-stage company with no marketable products and virtually no customers. Unitrol's only major product was just being tested and was more than a year from being marketed. Significantly, they also alleged that Padda told a Sabratek shareholder that it had developed a strategy *with* KPMG to fund Sabratek's research and development "off the balance sheet." These facts, together with the magnitude of the alleged fraud, convinced Judge Castillo that the plaintiffs had adequately alleged facts that supported a strong inference of fraudulent intent. Id. For whatever reason, though, the plaintiffs here have not alleged any similar "red flags." The Court

cannot say that the magnitude of the misstatement – especially without any context[12] – satisfies the PSLRA's rigorous pleading requirements. For these reasons, the Court GRANTS KPMG's motion to dismiss.

II.

The Plaintiffs have alleged controlling-person liability against all of the individual defendants under Section 20(a) of the Securities Exchange Act, but only Reilly and Lautman have moved to dismiss that count. Section 20a provides that:

> [e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable *jointly and severally* with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. §78t(a) (emphasis added). To state a claim for Section 20a liability, the plaintiffs must plead that a defendant: (1) "exercised actual control over the general operations over Sabratek, and (2) had the ability and power to direct (or prevent) the fraudulent statements at issue here." Chu v. Sabratek Corp., 100 F. Supp. 2d 827 (N.D. Ill. 2001) ("Chu II") (citations omitted); see also Donohoe v. Consol. Operating & Production, 30 F.3d 907, 911-12 (7th Cir.1994). Primary liability under the securities laws is a prerequisite to Section 20a liability. See, e.g., FMC Corp. v. Boesky, 727 F. Supp. 1182, 1199 n.19 (N.D. Ill. 1989).[13] Since the Court has dismissed all of the primary claims for liability under Section 10b and Rule 10b-5, it is also proper to dismiss all of the Section 20a claims.

---

[12] Although $39 million is a huge number, plaintiffs have not even plead the size of Sabratek's's earnings to put this figure in context.

[13] Consequently, even thought Padda's motion would ordinarily have been untimely, since he did not raise it until his reply brief, the absence of a primary violation makes it appropriate to dismiss the Section 20a claim against Padda as well.

III.

With respect to the individual defendants, the Court dismisses all supplemental state-law claims because the federal claims to which they were pendant have been dismissed.

## Conclusion

For the reasons stated herein, the Court GRANTS the defendants motions in their entirety but WITHOUT PREJUDICE.

Enter:

_____
David H. Coar
United States District Judge

Dated: September 28, 2001